<u>**UNPUBLISHED**</u>

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**No. 04-2250**

---

VINCENT F. STRAWBRIDGE, JR.; REBECCA S.
STRAWBRIDGE,

Plaintiffs - Appellants,

versus

SUGAR MOUNTAIN RESORT, INCORPORATED; B. DALE
STANCIL, individually; THE SUGAR MOUNTAIN
IRREVOCABLE TRUST; THE B. DALE STANCIL
IRREVOCABLE TRUST,

Defendants - Appellees.

---

**No. 04-2331**

---

VINCENT F. STRAWBRIDGE, JR.; REBECCA S.
STRAWBRIDGE,

Plaintiffs - Appellees,

versus

SUGAR MOUNTAIN RESORT, INCORPORATED; B. DALE
STANCIL, individually; THE SUGAR MOUNTAIN
IRREVOCABLE TRUST; THE B. DALE STANCIL
IRREVOCABLE TRUST,

Defendants - Appellants.

Appeals from the United States District Court for the Western District of North Carolina, at Asheville. Lacy H. Thornburg, District Judge. (CA-02-92)

———————

Argued: September 19, 2005          Decided: October 28, 2005

———————

Before WILLIAMS and MICHAEL, Circuit Judges, and James C. DEVER, III, United States District Judge for the Eastern District of North Carolina, sitting by designation.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** R. Hayes Hofler, III, HAYES HOFLER & ASSOCIATES, P.A., Durham, North Carolina, for Appellants/Cross-Appellees. Wyatt Shorter Stevens, ROBERTS & STEVENS, P.A., Asheville, North Carolina; James Robert Fox, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellees/Cross-Appellants. **ON BRIEF:** Daniel B. Hill, HAYES HOFLER & ASSOCIATES, P.A., Durham, North Carolina, for Appellants/Cross-Appellees. Jennifer I. Oakes, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellees/Cross-Appellants B. Dale Stancil, The Sugar Mountain Irrevocable Trust, The B. Dale Stancil Irrevocable Trust.

———————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

This is an appeal from a defense verdict in a case brought by Vincent and Rebecca Strawbridge against Sugar Mountain Resort, Inc. (SMR), its alleged alter-ego, B. Dale Stancil, and two trusts created by Stancil. (We will refer to the defendants as SMR and Stancil.) Mr. Strawbridge was injured in a skiing accident at the SMR resort. The Strawbridges contend that the district court erred in refusing to allow them additional voir dire or grant a new trial after the defense's voir dire allegedly revealed that two jurors had failed to respond to an important question posed by the Strawbridges during their voir dire. The Strawbridges also claim that the district court erred in excluding evidence about rocks at the site of Mr. Strawbridge's accident. Alternatively, the Strawbridges argue that the district court abused its discretion in refusing to enforce a settlement agreement allegedly reached before trial. Finding no error, we affirm.

I.

The Strawbridges allege that on January 22, 1998, Mr. Strawbridge skied over a ledge at SMR's resort, where he hit a bare spot of dirt, lost control, and fell. Mr. Strawbridge sustained serious physical injuries. In their complaint, filed April 22, 2002, the Strawbridges asserted claims of negligence and loss of consortium and sought both compensatory and punitive damages.

3

Stancil was named as a defendant on the theory that SMR was his alter ego. Stancil's presence as a defendant was of moment because SMR carried only $1 million in liability insurance.

SMR and Stancil filed motions for summary judgment on December 1, 2003, and the motions were referred to the magistrate judge. The magistrate judge held a hearing on these motions on February 4, 2004, and two days later, on February 6, filed a memorandum recommending the award of summary judgment to the defendants on all claims. After considering the magistrate judge's recommendation de novo, the district judge granted summary judgment to SMR on the Strawbridges' request for punitive damages, but otherwise denied the summary judgment motions. Strawbridge v. Sugar Mountain Resort, 320 F. Supp. 2d 425 (W.D.N.C. 2004).

In the meantime the parties had been involved in settlement negotiations. Prior to the February 4, 2004, summary judgment hearing, the Strawbridges demanded $8 million to settle their claims. Wyatt Stevens, the lawyer for SMR's insurer, made a $450,000 counteroffer, which the Strawbridges rejected. Shortly after the February 4 hearing, a lawyer retained directly by SMR, Robert Riddle, asked the Strawbridges to reconsider settlement.

The parties dispute the facts concerning subsequent settlement negotiations. According to the Strawbridges' lawyer, Hayes Hofler, at approximately 11:00 a.m. on February 6, 2004, Riddle made an offer to settle for the policy limits of $1 million,

4

and Hofler accepted on behalf of the Strawbridges. The Strawbridges allege that, after accepting, Hofler asked Riddle if the payment could be structured as loss of future income in an effort to avoid a $400,000 lien arising from Mr. Strawbridge's medical bills. The Strawbridges claim that Riddle responded that he thought that approach would not be a problem and that he would discuss it with Stevens. SMR disputes this account. It claims that Hofler indicated that his clients (the Strawbridges) would accept the policy limits of $1 million on the condition that payment be structured as loss of future income. SMR insists that because it never accepted this condition, the parties never reached a settlement agreement.

In any event, later in the day of February 6, before Stevens responded to Riddle about payment structuring, Stevens learned that the magistrate judge recommended dismissal of the case. Shortly thereafter, Stevens contacted Riddle and told him that a $1 million settlement, with the structuring condition, was unacceptable. Around 5:00 p.m. Hofler (on behalf of the Strawbridges) left a telephone message for Stevens in an effort to confirm settlement. Stevens returned Hofler's call around 5:30 and told him that Riddle did not have authority to settle the case in light of the Strawbridges' request to structure payment.

In March 2004 the Strawbridges, claiming that a settlement agreement had been reached, filed a motion to enforce

5

it, and the district court held a hearing.  After considering the lawyers' oral representations, their affidavits, and transcripts of some of the telephone calls at issue, the court found that no settlement had been reached because the parties never agreed to all material terms of settlement.

The case proceeded to trial on July 12, 2004.  During voir dire the judge asked the jury panel some preliminary questions related to possible bias, including:  "Do[ any] of you have any prejudices or biases that you know of that would affect your ability to sit in a case of this kind involving a ski incident, just simply by the reason of the nature of the sport or exercise, whatever you wish to call it?"  J.A. 1131.  There was no affirmative response.  Later, the Strawbridges' lawyer asked the panel:

> Do any of you have anybody, family, close family, relatives, children, who is in any way involved in the ski industry, not necessarily on the slopes themselves, but maybe providing supplies to a resort or making deliveries to a resort or going there to make repairs, that kind of thing, in any way that might be remotely connected with the ski industry?

J.A. 1144.  There was no response.  The Strawbridges passed on the panel, and the defense side began its questioning.  Defense counsel asked whether any of the jurors knew anyone closely connected with the ski industry.  Juror Nicholson responded that the president of the company for which he worked was a volunteer ski patroller who might have worked for SMR.  Juror McDonald reported that the son of

6

one of her best friends owns a local ski shop. When defense counsel passed on the panel, the Strawbridges requested that voir dire be reopened to allow them to inquire of jurors Nicholson and McDonald. This request was denied. At the close of evidence the Strawbridges moved to strike jurors Nicholson and McDonald, and this motion was denied. The jury returned a verdict for the defendants on the seventh day of trial, and the district court later denied the Strawbridges' motion for a new trial that was based on the claim of inadequate voir dire and juror bias.

The Strawbridges appeal the adverse rulings discussed above. SMR cross-appeals the district court's refusal to give a jury instruction on assumption of risk, and Stancil cross-appeals the court's denial of his motion for summary judgment on the alter-ego issue.

## II.

### A.

The Strawbridges contend that the district court erred in refusing to reopen voir dire. They insist that the failure of the two jurors (Nicholson and McDonald) to provide pertinent information in response to their question about ties to the ski industry prevented them from intelligently exercising their peremptory challenges. We conclude that the district court did not err in refusing to reopen voir dire. A trial judge has broad

7

discretion in overseeing the conduct of voir dire, subject to "essential demands of fairness." Aldridge v. United States, 283 U.S. 308, 310 (1931); United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir. 1977). Trial judges "must reach conclusions as to [a prospective juror's] impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions." Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981). An "appellate court [cannot] easily second-guess the conclusions of [a trial judge] who heard and observed" a juror's responses and demeanor during voir dire. Id.

In the present case, the trial judge asked his own preliminary questions on voir dire that were aimed at uncovering any bias or prejudice relating to the sport of skiing. There was no response that raised a red flag. In addition, the judge observed the responses and demeanor of the two jurors in question. The judge declined to reopen voir dire, reasoning that both sides had been given adequate opportunity to question jurors, and all jurors seated assured the judge that they could be fair and impartial. The judge was satisfied that "had there been some bias or prejudice that would affect [the jurors'] verdict . . . it would have been uncovered" during voir dire. J.A. 1194. The trial judge thus determined that the voir dire was adequate on matters of potential bias. We have ample grounds for deferring to this

determination, and we conclude that the judge did not err in refusing to reopen voir dire.

B.

The Strawbridges also contend that they are entitled to a new trial because the two jurors (Nicholson and McDonald) failed to provide honest responses at voir dire. A new trial is warranted when (1) a juror failed to answer a material question honestly on voir dire, even if the failure was innocent, and (2) a correct response would have provided a basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984). The question the Strawbridges posed to the panel was:

> Do any of you have anybody, family, close family, relatives, children, who is in any way involved in the ski industry, not necessarily on the slopes themselves, but maybe providing supplies to a resort or making deliveries to a resort or going there to make repairs, that kind of thing, in any way that might be remotely connected with the ski industry?

J.A. 1144. The Strawbridges maintain that because the question contained the word "anybody," the two jurors were dishonest when they did not respond with information about non-familial ties to the ski industry.

A new trial is not warranted because, as the district judge found, the jurors did not respond dishonestly to the Strawbridges' question. According to the trial judge, the most logical interpretation of the question is that it was limited to

9

potential jurors' family ties to the ski industry. This interpretation led the judge to conclude that the jurors' responses were neither inconsistent nor dishonest. We agree with the judge's analysis. The Strawbridges' inability to obtain the information they sought during voir dire is attributable to their failure to state their question clearly, not the jurors' failure to answer the question honestly.

C.

The Strawbridges further argue that they are entitled to a new trial based on the actual bias of jurors Nicholson and McDonald or the trial court's error in denying a hearing (including further questioning) on the issue of actual bias. A showing that a juror was actually biased, regardless of whether the juror was truthful or deceitful, can entitle a party to a new trial. Jones v. Cooper, 311 F.3d 306, 310 (4th Cir. 2002). A trial court has broad discretion to determine whether to order a hearing on a claim of juror bias. See McDonough, 464 U.S. at 556 (Blackmun, J., concurring); Fitzgerald v. Greene, 150 F.3d 357, 363 (4th Cir. 1998).

The Strawbridges have simply made no showing that either Nicholson or McDonald was a biased juror. Moreover, we have reviewed the record and conclude that the trial court did not abuse

its discretion in declining to hold a hearing or permit further questioning on the issue of actual bias.

III.

The Strawbridges argue that the trial court erroneously excluded evidence showing that rocks existed on the area of the slope where Mr. Strawbridge fell. Because Mr. Strawbridge testified that he encountered a bare spot of dirt (he did not mention rocks), the court did not err in excluding evidence of rocks on the basis that it was not relevant under Federal Rules of Evidence 401 and 402.

IV.

The Strawbridges argue that the district court abused its discretion in refusing to enforce a settlement agreement they allegedly reached with SMR. A court should enforce a settlement agreement when the partes have agreed on all material terms. <u>Piver v. Pender County Bd. of Educ.</u>, 835 F.2d 1076, 1083 (4th Cir. 1987); <u>Boyce v. McMahan</u>, 208 S.E.2d 692, 695 (N.C. 1974). After holding a hearing on the settlement question and carefully reviewing the facts, the district court found that there was no meeting of the minds. Riddle, SMR's lawyer, considered the deal to be conditioned upon the Strawbridges' requirement that payment be structured as loss of future income. The Strawbridges argue that the court

11

should enforce the agreement because payment structure was not a material condition.  However, as the district court found, payment structure was material because the defense side feared exposure to liability on Mr. Strawbridge's medical liens.  The district court did not abuse its discretion in refusing to enforce the alleged settlement agreement.

V.

Because our rulings on the voir dire, jury bias, evidentiary, and settlement issues mean that the jury's finding of no liability on the part of the defendants will stand, we have no reason to reach the Strawbridges' argument that the district court erred in granting summary judgment to SMR on the issue of punitive damages.  Likewise, because the judgment for the defendants will be affirmed, we will not consider the issues raised in the defendants' cross-appeals.  The judgment is affirmed.

AFFIRMED