NORTH CAROLINA NATIONAL BANK, PLAINTIFF v. G. C. WALLENS AND WIFE, J. W. WALLENS AND DONALD SCHAAF AND WIFE, DORIS SCHAAF, DEFENDANTS

— AND —

DONALD SCHAAF, THIRD-PARTY PLAINTIFF v. SAMUEL LONGIOTTI, THIRD-PARTY DEFENDANT

Nos. 7515SC177 and 7515SC178

(Filed 16 July 1975)

**Contracts § 3— memorandum until complete documents drawn up — enforceable contract**

A paper writing containing the statement, "This letter is to serve as a *memorandum agreement* until proper complete documents can be drawn up to consummate this transaction," is not unenforceable as a contract as a matter of law since it cannot be said that the execution of a later agreement was a condition precedent to any contractual rights which might otherwise pertain, and the reference to more "complete" documents does not necessarily indicate that material portions of the agreement have been left open to future negotiation.

APPEAL by third-party plaintiff Donald Schaaf from *Braswell, Judge.* Judgments entered 9 January 1975 in Superior Court, ORANGE County. Heard in the Court of Appeals 7 May 1975.

For purposes of appeal, Cases Nos. 74CvS302 and 74CvS570 have been consolidated.

In its complaint filed 28 February 1974, plaintiff bank sought to collect on a note, alleging in part that on or about 18 March 1970, defendants executed and delivered to plaintiff a note in the amount of $141,996.96; that defendants had defaulted in their payments; that plaintiff's demand for payment was refused; and that a balance of $88,377.00 was due.

In a second complaint filed 24 April 1974, plaintiff bank sought to collect on a second note, alleging in part that on or about 2 March 1973 defendant G. C. Wallens, on behalf of Koretizing Mart of Chapel Hill, executed and delivered to plaintiff a note in the amount of $76,370.25; that the Koretizing Mart had defaulted in payments; and that a balance of $52,102.76 was due. Pleading in the alternative, plaintiff sought recovery from defendants by first alleging that they had guaranteed all debts of the Koretizing Mart of Chapel Hill pursuant to a writing dated 23 July 1970. Secondly, plaintiff alleged that this note

was only a renewal of an earlier note signed by defendants G. C. Wallens and Donald Schaaf.

In both actions, defendant Donald Schaaf filed a third-party complaint against Samuel Longiotti seeking indemnification if Schaaf should be found liable in the primary actions. In the third-party complaints it was alleged that on or about 27 May 1971, the third-party defendant, Longiotti, and the third-party plaintiff, Schaaf, entered into an agreement whereby Longiotti agreed to indemnify Schaaf for liability and loss on the claims now being asserted against Schaaf. The alleged agreement was attached to the pleadings in each case.

Pursuant to G.S. 1A-1, Rule 12(b)(6), Longiotti moved to dismiss each of the third-party complaints for the reason that they failed to state a claim upon which relief could be granted. Having expressly determined that there was no just reason for delay, the trial court entered judgments dismissing the third-party complaints. From these judgments, third-party plaintiff, Schaaf, appealed.

*Manning, Fulton & Skinner, by Howard E. Manning, Thomas C. Worth, Jr., and Lawrence W. Hill, Jr., for third-party plaintiff appellant.*

*Midgette, Page, Higgins & Niles, by Robert J. Page, Keith D. Lembo, and W. Laurens Walker, for third-party defendant appellee.*

MARTIN, Judge.

The original defendant, Donald Schaaf, as third-party plaintiff, alleges that the third-party defendant, Samuel Longiotti, is liable to him for all of the plaintiff's claim against him. His claim is based on a writing which appears in the record as follows:

"PA PLAZA ASSOCIATES INC.

Post Office Box 2208 Chapel Hill, North Carolina 27514
May 27, 1971
CERTIFIED MAIL

Mr. Don Schaaf
51 Compass Lane
Fort Lauderdale, Florida 33308

Dear Don:

This letter is to serve as a memorandum agreement until proper complete documents can be drawn up to consummate this transaction.

Mr. Longiotti hereby agrees to guarantee Mr. Schaaf against any claims due on the four (4) bank notes involving the Koretizing ventures which Mr. Schaaf and Mr. Wallens own jointly, i.e., Chapel Hill, Elizabeth City, Henderson, and Roanoke Rapids. In return for this Mr. Schaaf surrenders his interest and any claims in these Koretizing ventures to Mr. Longiotti and Mr. Wallens and as additional consideration to them he agrees the rental through May 1971 for Henderson and Elizabeth City are properly chargeable against funds due him from Mr. Longiotti. Also, Mr. Schaaf agrees that the rental due from Gerry Wallens and Sam Longiotti for the Chapel Hill location is to be reduced to one-half (½) the normal rent for the months of June, July, August, and September 1971, thereafter to resume at full rental.

ACCEPTED BY:
s/ SAMUEL LONGIOTTI

Sworn to and subscribed before
me this 27th day of May, 1971.
s/ ALMA G. ANDREWS
Notary Public
My Commission Expires: June 2, 1975

ACCEPTED BY:
s/ DON SCHAAF

Sworn to and subscribed before
me this 17th day of June, 1971.
s/ ALLEN J. RICHTER
Notary Public
My Commission Expires:"

Apparently, no subsequent documents were executed.

The issue presented for decision is whether the third-party complaint affirmatively pleads facts which necessarily negate

and defeat the third-party plaintiff's right to relief. Resolution of this issue, in turn, depends upon whether the alleged agreement of 27 May 1971 is unenforceable as a matter of law.

According to the third-party defendant, Samuel Longiotti, the crucial language is contained in the first paragraph which states, "This letter is to serve as a memorandum agreement until proper complete documents can be drawn up to consummate this transaction." Relying on *Boyce v. McMahan,* 285 N.C. 730, 208 S.E. 2d 692 (1974), it is argued that this language makes clear the preliminary nature of the alleged agreement and, further, that it destroys the efficacy of the writing as a contract as a matter of law.

In *Boyce v. McMahan, supra,* the paper writing in question contained the following language: "WHEREAS the OWNER AND DEVELOPER . . . desire to enter into a preliminary agreement setting out the main features as to the desires of both parties and to execute a more detailed agreement at a later date; . . . That the parties hereto agree to supplement this preliminary agreement by executing a more detailed agreement at some specific and subsequent date to be agreed to by the parties hereto." No further contract or agreement had been executed in that case. This Court held that the writing was unenforceable as a contract, and our Supreme Court affirmed that result, by stating that "[t]he writing itself carries the terms which destroy its efficacy as a contract."

The Court's reasoning in *Boyce* is clear. Generally, a contract, or offer to contract, which leaves material portions open for future agreement is nugatory and void for indefiniteness. The reason is that if a preliminary contract fails to specify all of its material and essential terms so that some are left open for future negotiations, then there is no way by which a court can determine the resulting terms of such future negotiations. Hence, there is no basis upon which to ascertain what damages, if any, might follow from a refusal to enter into such future agreement. By its own terms, the writing in *Boyce* was *incomplete* and subject to *supplementation* by a more *detailed agreement.* We find *Boyce* to be distinguishable.

Clearly, if the parties in the present case had manifested an intent not to become bound until the execution of a more formal agreement or document, then such an intent would be given effect. However, they stated that the writing would *serve*

as an agreement until "proper complete documents" could be drawn. From such language it cannot be said that execution of a later agreement was a condition precedent to any contractual rights which might otherwise pertain. Furthermore, reference to a more "complete" document does not necessarily indicate that material portions of the agreement have been left open for future negotiation. It could mean only that immaterial matters, which are of no consequence, will be added to complete the agreement. Also, the writing under consideration was sent to the third-party plaintiff by the third-party defendant, Samuel Longiotti, who now seeks to repudiate it.

As stated in *Boyce*, "In the usual case, the question whether an agreement is complete or partial is left to inference or further proof." "The subsequent conduct and interpretation of the parties themselves may be decisive of the question as to whether a contract has been made even though a document was contemplated and has never been executed." 1 Corbin, Contracts, § 30, pp. 107-8 (1963).

In the present case there is nothing about the writing itself which destroys its efficacy as a contract as a matter of law. Therefore, we hold that it was error to dismiss the third-party complaints for failure to state a claim upon which relief could be granted.

Reversed.

Judges CLARK and ARNOLD concur.