WILLIAM R. and SUSAN T. LEFEVER, Plaintiffs,
v.
MIRIAM Y. TAYLOR, Defendant.
No. COA08-1278
Court of Appeals of North Carolina
Filed July 21, 2009
This case not for publication
Di Santi Watson Capua & Wilson, by Anthony S. di Santi, for plaintiffs-appellants.
James, McElroy & Diehl, P.A., by Fred B. Monroe, for defendant-appellee.
STROUD, Judge.
Plaintiffs appeal an order granting summary judgment in favor of defendant. For the following reasons, we affirm.

I. Background
On or about 5 February 2008, plaintiffs entered into a contract to purchase real property located at 315 Misty Ridge Lane, Blowing Rock, North Carolina ("property"). The contract was a Standard Form 2-T revised July 2007, "Offer to Purchase and Contract[.]" (Original in all caps.) Section 20 of the contract, entitled "Other Provisions and Conditions[,]" (original in all caps), contained an addition as follows: "Contingent on a first-right-of-refusal provided to Buyer from Seller, on Lots located at Gorge View Drive (PIN # XXXX-XX-XXXX-XXX at .33 Acres and PIN # XXXX-XX-XXXX-XXX at .32 Acres)."
For closing, plaintiffs were represented by Anthony S. di Santi. Defendant's attorney, Dustin N. Stacy, prepared a Warranty Deed conveying the property from defendant to plaintiffs, and by this deed defendant conveyed the property to plaintiffs on 3 March 2008. The deed contained the following provision:
2. In the event Grantors desire to sell or otherwise transfer Lots 114 and 115, Second Addition, Gay Mountain Subdivision to a third party pursuant to a bona fide offer in writing ("Purchase Agreement"), Grantors shall give written notice thereof to Grantees ("Refusal Notice"), which shall include a copy of the Purchase Agreement that Grantors propose to accept. Grantees shall have two (2) business days from the date of receipt of the Refusal Notice in which to exercise its right of first refusal and elect to purchase the property by giving written notice of such exercise ("Exercise Notice") to Grantors. If Grantees exercise their right of first refusal by giving Exercise Notice within the period set forth herein, Grantees shall be obligated to purchase, and Grantors shall be obligated to sell the Property in accordance with the terms and conditions set forth in the Purchase Agreement, except that, notwithstanding any provisions to the contrary in the Purchase Agreement, the terms upon which Grantees shall be obligated to purchase the Property shall include the following:
A. If the purchase price set forth in the Purchase Agreement for the Property is for consideration other than cash, Grantees shall be allowed to purchase the Property for cash in the amount equivalent to the consideration provided for in the Purchase Agreement.
B. Grantees shall not be required to assume any indebtedness in connection with the purchase, and the property shall be free and clear of any monetary liens, past due property taxes and assessments.
C. The closing shall occur within thirty (30) days after the Exercise Notice is given by Grantees to Grantors, time is of the essence.
This Right of First Refusal shall terminate upon the following, whichever occurs first:
1) One (1) year from the date of this instrument; or
2) Grantees failure to exercise their Right of Refusal pursuant to the terms set forth above and the subsequent sale and closing of Lots 114 and 115, Second Addition, Gay Mountain Subdivision to a third party.
(Emphasis added.)
The deed was recorded on 10 March 2008.
On 28 March 2008, plaintiffs filed a notice of lis pendens and a complaint against defendant. Plaintiffs alleged that the parties'
real understanding . . . was that the Defendant would grant a `first-right-of-refusal' to the Plaintiffs . . . until such time as the Defendant received a bona fide offer in writing to purchase Lots 114 and 115. . . at which time the Defendant would give notice to the Plaintiffs as required, and the Plaintiffs could either exercise, or fail to exercise, their right of first refusal . . . . The inclusion of the limitation: `One (1) year from the date of this instrument' does not comply with the terms of the contract between the Plaintiffs and the Defendants (sic). Plaintiffs requested that the trial court "reform and revise the deed from the Defendant to the Plaintiffs by striking the limitation, `One (1) year from the date of this instrument', so as to fully and truly express the real understanding and agreement between the Plaintiffs and the Defendant as stated in the contract[.]"[1]
On 9 May 2008, defendant filed her answer to the complaint which included a motion to dismiss, a motion for judgment on the pleadings, and at least seven affirmative defenses. Defendant denied that the parties had a "real understanding" that the right of first refusal would be unlimited in duration and alleged that the contract and deed "speak for themselves" and "are the best evidence of their contents[.]" Defendant alleged that the deed expressed "the final agreement and understanding of the parties."
On 10 July 2008, defendant filed a motion for summary judgment accompanied by the affidavits of defendant, Mr. Stacy, and Linda Tate, defendant's real estate broker. Plaintiffs opposed defendant's motion for summary judgment through their own affidavits and the affidavits of Shannon Taylor, who was Mr. di Santi's paralegal, and Todd Rice, plaintiffs' real estate broker. The motion for summary judgment was heard on 21 July 2008, and on 31 July 2008 the trial court entered an order granting summary judgment in favor of defendant and dismissing plaintiff's claims with prejudice. Plaintiffs appeal from the order granting summary judgment.

II. Summary Judgment
Plaintiffs argue that "the trial court erred in granting the defendant's motion for summary judgment or in the alternative, . .. failing to grant summary judgment in favor of the plaintiffs." (Original in all caps.) We disagree.

A. Standard of Review
Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. When considering a motion for summary judgment, the trial judge must view the presented evidence in a light most favorable to the nonmoving party. If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the nonmovant to present specific facts which establish the presence of a genuine factual dispute for trial.
In re Will of Jones, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citations and quotation marks omitted).

B. Facts Viewed in the Light Most Favorable to Plaintiffs
Viewing the evidence in the light most favorable to plaintiffs shows that plaintiffs had discussions with defendant's representative both before and after signing the contract and prior to closing. Although there were discussions regarding the response time for the right of first refusal if defendant received an offer, there were no discussions regarding "the duration of the right of first refusal[.]" Mr. Rice, the real estate broker who represented plaintiffs as buyer's agent, participated in discussions before the closing as to the required response time if defendant received "an offer to purchase the property from a third party, in which [plaintiffs] requested a 72 hour response time, and which [defendant] insisted upon a 48 hour response time, but there was no agreement regarding the duration or limiting the duration to the right of first refusal."
Ms. Taylor, the real estate paralegal for the law firm of di Santi Watson Capua & Wilson, assisted in preparation for the closing. On 27 February 2008, Ms. Taylor received copies of documents for the closing from defendant's attorney's paralegal and she "noticed that the deed did not contain a right of first refusal" nor a height restriction regarding defendant's property on Gorge View Drive. On 29 February 2008, Ms. Taylor "received a revised copy of the first page of the deed . . . which provided a[n incorrect] restriction . . . . [and] no right of first refusal[.]" Later on 29 February 2008, Ms. Taylor received a third deed which included both the height restriction from the contract and a right of first refusal. The language of the right of first refusal in the third proposed deed was identical to that in the deed as executed, except that plaintiffs were given five business days to respond regarding the right of first refusal, instead of two, and it did not contain the following language:
This Right of First Refusal shall terminate upon the following, whichever occurs first:
1) One (1) year from the date of this instrument; or
2) Grantees failure to exercise their Right of Refusal pursuant to the terms set forth above and the subsequent sale and closing of Lots 114 and 115, Second Addition, Gay Mountain Subdivision to a third party.
Ms. Taylor showed Mr. di Santi the third proposed deed and he informed her "that it was satisfactory." The law firm's files did not contain any additional correspondence regarding the closing after the third proposed deed. However, the deed which was executed at the closing was not the third proposed deed which Mr. di Santi had approved, and according to plaintiffs' brief, Mr. di Santi "failed to notice the change before the deed was recorded."
On 7 March 2008, plaintiffs were in Louisiana when they received a UPS overnight delivery envelope from their law firm. Plaintiffs executed the closing documents and returned them and a cashiers check to their law firm. The closing was completed on 10 March 2008. Plaintiffs did not receive a copy of the deed prior to the closing on 10 March 2008 and did not see the executed original deed until 17 March 2008, when they received it in the mail from the Watauga County Register of Deeds. Plaintiffs "immediately noticed that the right of first refusal was limited to one year" and called their real estate agent, Mr. Rice, and their attorney to express their concern about the one-year limitation. Plaintiffs' attorney advised them "that it was obviously a mistake, and directed [them] to return the original deed so that he could get it corrected to comply with the terms of the contract." Plaintiffs returned the deed to their attorney, but on or about 19 March 2008, he advised them "that the seller was not willing to correct the deed to comply with the terms of the contract," whereupon plaintiff's authorized their attorney to file the lawsuit which is currently before this Court.
Plaintiffs argue that their counsel
is in his 34th year of practicing law in the State of North Carolina, and only once before in those 34 years has an attorney who submitted a deed for review before closing changed the deed that was tendered at the closing without the attorney mentioning to [appellants' counsel] the changes the attorney made to the deed after it was reviewed and approved until this transaction. . . . [T]he attorney for the appellee changed the deed that he had submitted for review and approval to the appellant's attorney after it was reviewed and approved, but the appellee's attorney failed to disclose to the appellant's attorney that a significant change had been made, and the appellant's attorney failed to notice the change before the deed was recorded.
In summary, the facts for purposes of summary judgment in the light most favorable to plaintiffs are: defendant's counsel prepared a deed containing a right of first refusal with no time limitation, which plaintiffs' counsel reviewed and approved. Without bringing it to the attention of plaintiffs' attorney, defendant's counsel changed the right of first refusal in the deed by adding a one-year limitation. Plaintiffs' counsel did not notice the change, and the deed was executed and recorded with the one-year limitation.

C. Reformation
Plaintiffs' complaint sought only reformation of the deed to conform to "the real understanding and agreement" of the parties, a right of first refusal with no time limitation. A party may be allowed to reform an instrument due to either mutual mistake or a unilateral mistake induced by inequitable conduct. See, e.g., Carter v. West Am. Ins. Co., ___ N.C. App. ___, ___, 661 S.E.2d 264, 269 (2008); Light v. Equitable Life Assurance Soc'y, 56 N.C. App. 26, 32-33, 286 S.E.2d 868, 872 (1982).
The equitable remedy of reformation is available when, because of the mutual mistake of the parties, the agreement expressed in a written instrument differs from the actual agreement made by the parties. The mistake of only one party to the instrument, if such mistake was not induced by the fraud of the other party, affords no ground for relief by reformation. The party asking for relief, by reformation of a written instrument, must prove, first, that a material stipulation was agreed upon by the parties to be incorporated in the instrument as written; and, second, that such stipulation was omitted from the instrument by mistake, either of both parties, or of one party, induced by the fraud of the other, or by the mistake of the draftsman.
Light at 32-33, 286 S.E.2d at 872 (citations omitted). However,
there is a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they agreed and have chosen fit and proper words to express that agreement in its entirety. This presumption is strictly applied when the terms of a deed are involved in order to maintain the stability of titles and the security of investments.
Hice v. Hi-Mil, Inc., 301 N.C. 647, 651, 273 S.E.2d 268, 270 (1981) (citations and quotation marks omitted).

1. Mutual Mistake
A mutual mistake is one common to both parties to a contract wherein each labors under the same misconception respecting a material fact, the terms of the agreement, or the provisions of the written instrument designed to embody such agreement. Reformation is proper to give effect to the terms of the contract the parties originally agreed upon provided there is clear, cogent and convincing evidence of the parties' intentions to contract upon these terms.
Metro. Prop. and Cas. Ins. Co. v. Dillard, 126 N.C. App. 795, 798, 487 S.E.2d 157, 159 (1997) (citations, quotation marks, and ellipses omitted).
Here, neither plaintiffs' complaint nor affidavits indicate that defendant "mistakenly" included the one-year limitation. In fact, when viewed in a light most favorable to plaintiffs, plaintiffs' evidence indicates that defendant intentionally inserted the provision into the deed after plaintiffs' attorney's final review of the deed, perhaps hoping that plaintiffs' attorney would not notice the change. There is absolutely no evidence before this Court that defendant "mistakenly" included the one-year provision and thus was "under the same misconception" as plaintiffs. Id.

2. Unilateral Mistake
In order to exercise equitable jurisdiction for the purpose of reforming the instrument because it does not properly express the agreement of the parties, it is established that the mistake must be mutual, or it must be the mistake of one superinduced by the fraud of the other. Thus, to survive summary judgment in an action for equitable reformation of a contract on the basis of inequitable conduct by the promisor, a plaintiff must show a factual basis for four essential elements: (1) the written agreement did not properly express the intent of the parties, (2) the conduct of the promisor caused the improper expression, (3) relevant, competent evidence exists outside the written documents which shows the intention of the parties, and (4) injustice will result if the contract is not rewritten[.]
Carter at ___, 661 S.E.2d at 269 (citations, quotation marks, ellipses, brackets, and parentheses omitted).
In order to state a claim for reformation based upon plaintiffs' unilateral mistake, plaintiffs must first demonstrate that "(1) the written agreement did not properly express the intent of the parties" and, related to this element, that "(3) relevant, competent evidence exists outside the written documents which shows the intention of the parties[.]" Id. As to these elements regarding the intent of the parties, the contract did include a provision regarding a right of first refusal which both parties intended to be incorporated into the deed; however, the contract is silent as to the terms of the right of first refusal, including the manner of its exercise and its duration. "A right of first refusal is a restraint on alienation. In spite of the fact that a right of first refusal provision constitutes a restraint of alienability, our Supreme Court has held such agreements are enforceable if carefully limited in duration and price and are reasonable." County of Jackson v. Nichols, 175 N.C. App. 196, 200-01, 623 S.E.2d 277, 280 (2005) (citations and quotation marks omitted).
Plaintiffs argue that because the contract did not contain any time limitation on the right of first refusal, plaintiffs were entitled to a right which would continue for thirty years pursuant to N.C. Gen. Stat. § 41-29, which provides in pertinent part that "[a]n option in gross with respect to an interest in land or a preemptive right in the nature of a right of first refusal in gross with respect to an interest in land becomes invalid if it is not actually exercised within 30 years after its creation." N.C. Gen. Stat. § 41-29 (2007). Essentially, plaintiffs claim that a right of first refusal with no term stated has an implied term of thirty-years. Thus, if the deed had included a right of first refusal with no time limitation, a term of thirty years would be implied. However, plaintiffs cite no authority for implying a thirty year duration of a right of first refusal in a contract where no specific duration is stated. Our courts cannot simply insert provisions into an unambiguous contract. Hodgin v. Brighton, ___ N.C. App. ___, ___, 674 S.E.2d 444, 446 (2009) (citations and quotation marks omitted) (emphasis added) ("Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms. If the plain language of a contract is clear, the intention of the parties is inferred from the words of the contract."). None of the evidence indicates that the parties ever had any intent to imply a thirty year term.
As the contract did not contain any specific terms for the right of first refusal, the parties had at best an "agreement to agree" as to a duration for the right of first refusal, and an "agreement to agree" is unenforceable. Nichols at 199, 623 S.E.2d at 279-80. (citations and quotation marks omitted) ("It is well settled that a contract leaving material portions open for future agreement is nugatory and void for indefiniteness. The reason for this rule is that if a preliminary contract fails to specify all of its material and essential terms so that some are left open for future negotiations, then there is no way by which a court can determine the resulting terms of such future negotiations. If the parties to the contract manifested an intent not to become bound until the execution of a more formal agreement or document, then such an intent would be given effect. In the usual case, the question whether an agreement is complete or partial is left to inference or further proof. The subsequent conduct and interpretation of the parties themselves may be decisive of the question as to whether a contract has been made even though a document was contemplated and has never been executed."). Here, the parties clearly intended not to be bound until another instrument, the deed, was executed. The deed was executed, and it did contain a right of first refusal, albeit not with the duration plaintiffs expected.
Plaintiffs' only remaining argument regarding the parties' intent is that the terms of the right of first refusal were not what they intended, but the evidence viewed in the light most favorable to plaintiffs does not contain a scintilla of evidence that the parties ever agreed to or even discussed a time period for the right of first refusal. The plaintiffs' own affidavit asserts that "there were no discussions or agreements as to the duration of the right of first refusal[.]"
Even if we were to assume arguendo that "the written agreement did not properly express the intent of the parties" and "relevant, competent evidence exists outside the written documents which shows the intention of the parties," plaintiffs have failed to produce evidence that "the conduct of the [defendant] caused the improper expression." Carter at ___, 661 S.E.2d at 269 (citations omitted). Plaintiffs do not allege that the inclusion of the one-year limitation was induced by the mistake, fraud or misrepresentation of defendant.
As plaintiffs have not forecast evidence sufficient to survive summary judgment as to the first three elements needed to establish a claim for unilateral mistake, we need not address the fourth element, whether "injustice will result if the contract is not rewritten[.]" Id. (citation omitted). Summary judgment was proper. However, if there is any "injustice" in this case, it was the failure of defendant's counsel to behave in the manner that plaintiffs' counsel had come to expect based upon his many years of law practice, in accordance with the professional courtesy and cooperation normally extended from one member of the bar to another. Yet, even assuming that all of plaintiffs' allegations are true, as we do for purposes of review of summary judgment, this Court does not have the power to remedy this particular injustice.
Although defendant raises several other arguments as to why the motion for summary judgment was properly granted, we need not address these arguments, as plaintiffs' forecast of evidence fails to support their claim for reformation of the deed.

III. Conclusion
The order of the trial court granting summary judgment for defendant is affirmed.
AFFIRMED.
Judges JACKSON and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] Plaintiffs also requested the trial court "to order the Defendant to specifically perform the terms of the contract . . .." However, neither the allegations of plaintiffs' complaint nor plaintiffs' brief state any contentions regarding specific performance.